**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**NORTHERN DIVISION**

| | |
|---|---|
| **DAIRY HEALTH PRODUCTS, INC.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**IBA, INC.,**<br><br>**Defendants.** | **MEMORANDUM DECISION & ORDER**<br><br>**Case No. 1:07CV75DAK** |

This matter is before the court on Defendant IBA, Inc.'s Motion to Dismiss or Transfer Venue and Defendant's Motion to Strike Improper Declaration Evidence. The court held a hearing on the motions on January 8, 2008. At the hearing, Plaintiff was represented by Mark A. Miller, and Defendant was represented by Todd E. Zenger. The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

This case involves a dispute between two competitors in the livestock powdered teat dip market. IBA is the owner of U.S. Patent No. 7,208,170 for "Powder Teat Dip Germicide, Fungicide and Skin Conditioner," ("the '170 patent"). IBA sent a letter to DHP accusing DHP of infringing the '170 patent. DHP's Amended Complaint seeks a declaratory

judgment that (1) DHP's powdered teat dip product does not infringe the patent in suit; (2) the patent is invalid; and (3) the patent is unenforceable due to inequitable conduct.

DHP is a Utah corporation with its principal place of business in Hyrum, Utah. IBA is a Massachusetts corporation with its principal place of business in Millbury, Massachusetts. IBA asserts that it owns no property, has no mailing address, has no telephone number, has no bank accounts, has no stores, has no business operations, has no office, has no employees, has no sales force or broker, and warehouses no product in Utah. IBA also states that it has no manufacturing licensee based in or selling into Utah. IBA admits that it has one customer in Utah who has placed orders with IBA. IBA further states that it has no ownership control of any other company, entity, licensee or distributor selling product in Utah. IBA also claims that it receives no royalty payments from any sales of any products in Utah. Finally, IBA asserts that no IBA affiliate, licensee or distributor which is based in Utah or which does business in Utah has the right to litigate claims under IBA's patent.

DHP alleges that from the 1980s through the early 2000s, IBA has contracted with at least two Utah companies to make dairy farm products under the IBA label. In particular, DHP manufactured a powdered teat dip for IBA under IBA's private label. The DHP powdered teat dip was covered by U.S. Patent No. 4,668,692 ("the '692 patent"). The application for the '692 patent was drafted, filed, and prosecuted by Utah patent attorney Terry M. Crellin.

In about 2002, IBA stopped purchasing DHP's powdered teat dip, after which DHP reformulated its teat dip product and began selling it under its own label. In September 2003, IBA retained Crellin to file and prosecute a patent application for IBA's '170 patent.

Contrary to IBA's allegations that it has no Utah contacts related to the '170

patent, DHP contends that IBA has and continues to use a Utah distributor, Giles Dairy Service in Springville, Utah, to sell its products. IBA sells its powdered teat dip covered by the '170 patent in Utah and elsewhere through Giles Dairy Service. DHP provided a declaration stating that Giles Dairy Service currently has IBA's patented teat dip in stock and for sale in Utah, and is expecting another shipment of the patented product from IBA next month.

Furthermore, the cease and desist letter IBA sent to DHP in early 2007 was sent from IBA's Utah patent counsel Crellin. And, after the '170 patent issued in April 2007, IBA's Utah patent counsel sent letters to DHP's customers, including Giles Dairy Service, threatening patent infringement litigation if they continued to purchase and distribute DHP's powdered teat dip product.

## DISCUSSION

### Motion to Dismiss

Defendant IBA, Inc. moves to dismiss Plaintiff DHP's Complaint for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. Alternatively, IBA moves to transfer this action to Massachusetts pursuant to 28 U.S.C. § 1404.

### I. Personal Jurisdiction

Both parties agree that because this is a patent case, Federal Circuit law governs the issue of personal jurisdiction to the extent that federal law governs. *Hildebrand v. Steck Mfg. Co., Inc.* 279 F.3d 1351, 1354 (Fed. Cir. 2002). To determine whether specific personal jurisdiction over a nonresident defendant is appropriate, the Federal Circuit direct district courts to determine "whether a forum state's long-arm statute permits service of process, and whether

the assertion of jurisdiction would be inconsistent with due process." *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

Under the Utah long-arm statute, the parties dispute whether IBA has transacted business in Utah. Utah's long-arm statute applies "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78-27-22. Accordingly, the personal jurisdiction analysis in this case "narrows to one inquiry: whether jurisdiction comports with due process." *Electronics*, 340 F.3d at 1349-50.

IBA argues that the exercise of jurisdiction over it in Utah does not comport with federal due process standards. Neither party asserts that general jurisdiction applies. The Federal Circuit applies a three-factor analysis to determine whether specific personal jurisdiction over an out-of-state defendant comports with due process: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the claims arise out of or relate to the defendant's activities with the forum state; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *Id.* The plaintiff bears the burden of demonstrating the first two factors -- "minimum contacts" -- while the defendant bears the burden of showing that the exercise of jurisdiction would be unreasonable -- would not comport with traditional notions of fair play and substantial justice. *Id.*

*1. Activities Directed at Utah*

IBA asserts that the only relevant contact it has with Utah is the cease and desist letter it sent to DHP threatening litigation. DHP agrees that sending an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising

jurisdiction over an out-of state patentee. The Federal Circuit has recognized that "where a defendant has sent cease and desist letters into a forum state that primarily involve a legal dispute unrelated to the patent at issue, such as an injunction obtained for misappropriation of trade secrets, the exercise of personal jurisdiction is improper." *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc*., 444 F.3d 1356, 1366 (Fed. Cir. 2006). The court found that "the crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there. Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement." *Id*.

In this case, however, IBA has other activities that meet the minimum contacts requirements necessary to establish jurisdiction in the forum. IBA sells its dairy supply products, including the product covered by the patent in this suit, in Utah. IBA has done business with at least three Utah companies--DHP, Silicone Plastics, and Giles Dairy Service-- for decades. IBA's business activities include selling products to Giles Dairy Service, and having products manufactured under the IBA label in Utah by DHP and Silicone Plastics. Among the products made for IBA in Utah was a powdered teat dip covered by the '692 patent, which DHP alleges constitutes prior art to the '170 patent. Among the products IBA currently sells to Utah is the powdered teat dip product covered by the '170 patent. Despite IBA's contentions to the contrary, IBA's product is in stock and for sale in Utah.

Whether IBA sold its patented product to its Giles Dairy Service before or after the '170 patent issued is irrelevant to the jurisdictional analysis. What matters is that IBA

purposefully made efforts to develop a market for its product in Utah through its business dealings with Giles Dairy Service. In *Genetic Implant Systems, Inc. v. Core-Vent Corp*., the Federal Circuit rejected a defendant patent owner's assertions that "the combination of sales of its products in Washington and the warning letters . . . do not establish personal jurisdiction as the sales occurred prior to the issuance of the patent and thus are irrelevant to a determination of jurisdiction." 123 F.3d 1455, 1457 (Fed. Cir. 1997). The Federal Circuit found that the patent owner's prior sales demonstrated that it had "engaged in a program to develop a market in Washington." *Id*. at 1458. "These pre-1991 activities resulted in substantial revenue from sales in Washington and contributed to [the patent owner]'s presence in Washington by producing a customer base in the state that may result in or enhance future sales." *Id*.

In this case, IBA's long-time sales of products to Utah have contributed to IBA's market presence in Utah by producing and maintaining a customer base in the state. IBA has also purposefully availed itself of the privilege of doing business in Utah with respect to the specific product at issue in this case. IBA did not simply place its product in the stream of commerce, it knowingly and intentionally pursued the Utah market by selling directly to Utah. *See Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996).

IBA claims that the acts of a nonexclusive licensee--Giles Dairy Service--are not attributable to it. Cases preclude the finding of minimum contacts based on unilateral activity by third parties. *See Red Wing Shoe Co. Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). Doing business with a company that does business in a state is not the same as doing business in the state. *Id*. at 1361. In *Red Wing*, the patent owner did not make or sell any products, it merely licensed others under its patent. However, unlike this case, there was no

shipment of products to a customer located in the state. In this case, IBA is taking orders from and shipping product to Utah. IBA admits that it has sold to Giles Dairy Service approximately $80,000 of the product covered by its '170 patent since 2003. IBA further admits that it contacted Giles Dairy Service regarding IBA's '170 patent.

IBA also purposefully directed its activities to the State of Utah by choosing to use a Utah patent attorney, Terry Crellin, to both prosecute and enforce the '170 patent. The law clearly recognizes that the use of a patent attorney in the forum state to obtain and enforce a patent constitutes a purposeful and material jurisdictional contact with the forum state in a declaratory judgment patent action. *See Electronics*, 340 F.3d at 1351; *Akro Corp. v. Luker*, 45 F.3d 1541, 1547 (Fed. Cir. 1995).

In this case, IBA retained Crellin to draft, file, and prosecute the application leading to the '170 patent. During that process, DHP contends that IBA and Crellin deliberately withheld the '692 patent from the Patent Office, which it claims to be material prior art. Whether the '170 patent was obtained through inequitable conduct is relevant to the claims in this case that the '170 patent is unenforceable. Crellin also sent the cease and desist letter on behalf of IBA. These actions demonstrate that a substantial portion of the activities giving rise to DHP's claims of noninfringement, invalidity, and unenforceability of the patent occurred in Utah by IBA's own choice and deliberate actions.

*2. Relation of Contacts to Claims*

IBA’s sale of the patented product in Utah and the issuance of cease and desist letters clearly relate to DHP’s claims for declaratory relief. The purpose for DHP seeking declaratory relief is to enable it to sell its own product in direct competition with IBA's product

within Utah without the risk of an infringement suit. The law is clear that an "infringement letter sent into a forum state accompanied by the grant of a license to an in-state competitor doing business in the state [are] sufficient to justify assertion of personal jurisdiction against an out-of-state patentee." *Genetic Implant*, 123 F.3d at 1458. "The appointment of a distributor to sell a product covered by a patent is analogous to a grant of a patent license. Such an action conveys an implied license to the distributor, thereby, surrendering the patentee's right to exclude the distributor under the patent." *Id.* The combination of sending cease-and-desist letters into the forum state and selling products to the forum state that are covered by the relevant patent is enough to justify the exercise of personal jurisdiction over a patent owner in a declaratory judgment action. *See Breckenridge Pharm, Inc.*, 444 F.3d at 1365.

Moreover, the use of patent counsel in Utah to obtain the '170 patent and then to send the cease and desist letters clearly related to DHP's claims in this action seeking a declaration of noninfringement, invalidity, and unenforceability. The inequitable conduct alleged by DHP as to prior art occurred entirely in Utah by IBA's patent counsel. Therefore, there is a substantial relation between IBA's contacts within the state and DHPs' claims.

3. *Fairness and Reasonableness*

"Once the plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes defendants' burden to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Electronics*, 340 F.3d at 1351-52. The court must consider five factors with respect to this "compelling case": (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial

system's interest in obtaining the most efficient resolution of controversies"; and (5) the "shared interest of several States in furthering fundamental substantive social policies." *Iamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-77 (1985)).

*(1) The unforeseen and unreasonable burden on the defendant*

IBA claims it is a Massachusetts entity with no material contacts with Utah and all matters regarding the invention, inventors, business operations, witnesses and evidence of IBA are located in Massachusetts. Consequently, IBA argues it has not contemplated being haled into a Utah court. IBA, however, has sold its products in Utah for several years, it has employed patent counsel in Utah, and the files used to prosecute the relevant patent will be highly material to DHP's claim that the patent is unenforceable. The products accused of infringement are manufactured by DHP in Utah, and the prior art product under the '692 patent was manufactured by DHP in Utah under IBA's label. Therefore, IBA has not demonstrated a compelling case that there is no evidence or connections with Utah.

*2) No overriding state interest in adjudicating the dispute*

DHP’s Amended Complaint alleges that IBA obtained a patent by means of inequitable conduct -- withholding material prior art from the PTO-- and is now attempting to use that invalid patent to prevent DHP from competing with IBA's Utah distributor. The state of Utah has a clear and compelling interest in adjudicating DHP's claims for declaratory judgment in this instance.

*3) Plaintiffs' Interests in Obtaining Convenient and Effective Relief*

IBA contends that declaratory judgment plaintiffs should not be given substantial

weight under this element.  This argument, however, fails to recognize the rights provided to plaintiffs seeking declaratory relief under federal law.  DHP cannot be wholly disregarded merely because its action seeks declaratory relief.

*4) Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies & 5) Shared Interest of the Several States in Furthering Fundamental Substantive Social Policies*

Neither of the remaining factors weigh in favor of either party.  Because patent cases are governed by federal law and go to a consolidated federal appellate court, there is nothing particular about either district's need to adjudicate this matter. IBA has failed to present a compelling case that the exercise of jurisdiction over it in Utah would be unreasonable or unfair.  Accordingly, the court concludes that IBA is subject to personal jurisdiction in Utah.

**II.  Venue**

Venue of a declaratory judgment action is established only by 28 U.S.C. § 1391. The factual considerations under § 1391 require examining to see if IBA is subject to service, that is, personal jurisdiction in Utah.  For the reasons pointed out above, IBA contends that Utah is an improper venue under § 1391.  Because the court has concluded that IBA is subject to personal jurisdiction in Utah, venue in Utah is also proper and warranted under 28 U.S.C. § 1391. Accordingly, IBA's Motion to Transfer Venue is denied.

**Motion to Strike**

IBA moves to strike the declaration of Mark A. Miller and Steven J. Miller.  IBA claims that the declarations present unreliable hearsay, beliefs and understandings, and express

legal conclusions. The law is clear in patent cases that hearsay evidence "may be admitted for purposes of determining whether personal jurisdiction obtains." *Akro Corp.*, 45 F.3d at 1546-47. This rule is actually not unique to patent cases. *See, e.g., Theunussen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991) (allowing consideration of hearsay evidence in conjunction with Rule 12(b)(2) motion). IBA improperly relies on Rule 56(e) and summary judgment case law to attack the suitability of DHP's jurisdictional evidence. These evidentiary standards are not applicable to a Rule 12(b)(2) motion.

Moreover, the court finds nothing inherently unreliable about the evidence presented in the declarations. The email communications are attached as exhibits and demonstrate that they were typical business communications. Therefore, there is no basis for striking them. Other portions that are attacked merely present background and context to other relevant and unchallenged facts of record. One witnesses statement that it is his understanding that Crellin was IBA's attorney of record for the patent applications for the '692 and '170 patents is confirmed and established by the patent applications which are attached as exhibits. These types of statements need not be stricken merely because they are an understanding of other evidence. The court, therefore, denies IBA's motion to strike.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss or Transfer Venue is DENIED with respect to both personal jurisdiction and transfer of venue. Defendant's Motion to

Strike is also DENIED.

DATED this 6th day of February, 2008.

BY THE COURT:

DALE A. KIMBALL
United States District Judge